FILED

97 FEB 19 AM 10: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SYLVESTER and PATRICIA McGREW, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | CV 96-PT-3104-E |
| SUPERIOR OLDSMOBILE-BUICK, INC., GENERAL MOTORS ACCEPTANCE CORPORATION, CONTINENTAL INSURANCE, et al., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ENTERED

FEB 1 9 1997

Memorandum Opinion

This cause comes on to be heard on a motion to remand filed by the plaintiffs, Sylvester and Patricia McGrew, on December 27, 1996. On October 23, 1996, the plaintiffs filed an action in the Circuit Court of Calhoun County, Alabama, alleging that they were sold fraudulent insurance contracts in violation of the Alabama Mini-Code. On November 27, 1996, the defendants filed a notice of removal. In their motion to remand, the plaintiffs argue that no diversity jurisdiction exists in this case because the named representatives of the class and one defendant, Superior

Oldsmobile-Buick ("Superior"), are non-diverse.

## Analysis

The plaintiffs argue that because the named parties to the present action are not diverse from Superior, the court has no jurisdiction over the present action.

The defendants respond that this court's opinion in Arnold v. Ford Motor Co., CV 95-PT-0073-M (N.D. Ala. May 2, 1995), requires this court to assert jurisdiction over the present case. According to the defendants, since only the named plaintiffs and few other members of the putative class have claims against Superior, a considerable number of the putative class members will not have claims against Superior. Therefore, for those individuals, the joinder of Superior is fraudulent.

In Arnold v. Ford Motor Co., supra, this court held that joinder of a defendant non-diverse from the named parties but against whom a significant number of the class members could state no claim was fraudulent:

> "The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). To prove that joinder was fraudulent, defendants must prove either that "there is no possibility the plaintiff can establish any cause of action against the resident defendant," or that "plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." Id.; accord Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). In determining whether plaintiff could establish any cause of action against Pollack,
>> [the district court must evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff. <u>If there is even a possibility that a state court would find that the complaint states a cause of action against . . . any resident defendant[], the federal court must find the joiner was proper and remand the case to the state court.</u>
> Coker, 709 F.2d at 1440-41 (citation omitted) (emphasis added).
> Applying that standard, the court concludes that, as to most of the class, joinder of Pollack is fraudulent. Plaintiff represents a putative class of all persons who have purchased 1990 Ford F-250 trucks. Over 120,000 such vehicles were sold. . . . There is some possibility that those class members whose vehicles were purchased from Pollack could recover from Pollack. However, it is obvious that those class members whose trucks were not purchased from Pollack have no possibility of maintaining any claim against Pollack. As to those class members, joinder of Pollack is fraudulent. Accordingly, diversity jurisdiction exists as to all claims by class embers whose vehicles were not purchased from Pollack.

In this case, the defendants aver, only 686 of 12,625 service contracts sold to the named plaintiffs or putative class members were sold or issued by Superior. For approximately 12,000 members of

2

the putative class, therefore, the suit against Superior is fraudulent and no claim against Superior can be maintained.

Although Superior may therefore be considered fraudulently joined for a substantial number of class members, this holding does not necessitate that this court has jurisdiction over a;; the claims of all putative class members. The plaintiff implores the court to reconsider its holding on Arnold. In light of the counter arguments appearing among the district courts both in and out of Alabama, this court does so now.

The bedrock of the rule that diversity jurisdiction of a court in a class action can be established by minimal diversity of parties (and satisfaction of the amount in controversy) is contained in Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 367 (1921). In Cauble, the Supreme Court held that diversity between the named plaintiffs and defendants was sufficient to create diversity jurisdiction in a class action suit. Id. See also Snyder v. Harris, 394 U.S. 332, 340 (1969). In coming to this conclusion, the Supreme Court stated:

> In Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329, a creditor's bill was filed in equity to set aside a conveyance of a stock of merchandise. The suit was removed from the state court to the Circuit Court of the United States on the ground of diversity of citizenship. After the cause was removed co-claimants, citizens of the same state as were the defendants, were admitted into the suit. This, it was contended, prevented the court from proceeding to a decree, as it was without jurisdiction because the controversy became one not wholly between citizens of different states. Of this contention this court said (115 U. S. 64, 5 Sup. Ct. 1164, 29 L. Ed. 329):
>> 'This, of course, could have furnished no objection to the removal of the cause from the state court, because at the time these parties had not been admitted to the cause; and their introduction afterwards as co-complainants did not oust the jurisdiction of the court, already lawfully acquired, as between the original parties. The right of the court to proceed to decree between the appellants and the new parties did not depend upon difference of citizenship; because, the bill having been filed by the original complainants on behalf of themselves and all other creditors choosing to come in and share the expenses of the litigation, the court, in exercising jurisdiction between the parties, could incidentally decree in favor of all other creditors coming in under the bill. Such a proceeding would be ancillary to the jurisdiction acquired between the original parties, and it would be merely a matter of form whether the new parties should come in as cocomplainants, or before a master, under a decree ordering a reference to prove the claims of all persons entitled to the benefit of the decree. If the latter course had been adopted, no question of jurisdiction could have arisen. The adoption of the alternative is, in substance, the same thing.'
> This principle controls this case. The original suit was a class suit brought by a large number of the class as representatives of all its membership. . . .
>> Owing to the number of interested parties and the impossibility of bringing them all before the court, the original suit was peculiarly one which could only be prosecuted by a part

3

> of those interested suing for all in a representative suit. Diversity of citizenship gave the District Court jurisdiction. Indiana citizens were of the class represented, their rights were duly represented by those before the court. The intervention of the Indiana citizens in the suit would not have defeated the jurisdiction already acquired. Stewart v. Dunham, supra. Being thus represented, we think it must necessarily follow that their rights were concluded by the original decree.

Id. at 365-66. It is clear that, under Cauble, diversity jurisdiction cannot attach where the class is diverse and the named parties are not. If a named party who was non-diverse from a defendant were to file an action originally in state court, the action would not become removable even if subsequent to the filing of the action, diverse parties intervened. Under the rationale of Cauble, therefore, removal of the instant case was arguably improper.

With the enactment of the revised 28 U.S.C. § 1367 in 1990, Cauble apparently has been swallowed by a seemingly broader jurisdictional grant. Under § 1367(a)&(b),

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

While this statute undermines the rationale for Cauble, in that an putative intervener cannot intervene in a suit as a plaintiff if that intervenor does not independently meet the requirements of diversity jurisdiction, it does not apparently upset Cauble itself, and only extends it. Section 1367(b) does not, on its face, list class actions with those procedural devices for adding parties to a suit through which exercise of supplemental jurisdiction cannot be asserted. Some courts, such as the Fifth Circuit Court of Appeals in In re Abbott Labs, 51 F.3d 524 (5th Cir. 1995), have held that because class actions are not listed in the limited procedural devices for introducing additional parties to a suit, only one member of a putative class need satisfy the jurisdictional requirements for the entire class to be maintained in federal court. There exist significant reasons for thinking that the holding in Abbott Labs. is incorrect, however. One reason is that in enacting the revised § 1367, Congress stated that Zahn v. International Paper Co., 414 U.S. 291 (1973), which held that

4

every plaintiff in a federal class action suit premised on diversity jurisdiction had to meet the amount in controversy requirements of § 1332, was not overruled. It is therefore possible that § 1367 is an illegitimate procedural device for introducing parties who could not otherwise satisfy diversity requirements into the federal courts.

For present purposes, the court need not decide the issue because the result either way is the same. If any of the named plaintiffs or class members can arrive in federal court on the basis of satisfying diversity of citizenship under § 1367, then supplemental jurisdiction can be exercised over the class or the named parties, with one caveat: The claims over which this court has original jurisdiction under § 1332 and the claims over which it has supplemental jurisdiction must arise out of the same Article III "case or controversy."

Claims which share common questions of law or fact are not necessarily coextensive with claims which are part of the "same case or controversy" under Article III. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966), states that two or more claims are part of the "same case or controversy" if they derive from "a common nucleus of operative fact . . . [such that it] . . . would ordinarily be expected to try them all in one judicial proceeding." Recently, the Third Circuit Court of Appeals stated that in action in which jurisdiction is initially premised on diversity, "[c]laims are part of the same case or controversy if they share significant factual elements." HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1198 (3d Cir. 1996). By contrast, a case may involve common questions of law even where the individual events giving rise to those common questions are unrelated.

The putative action in this suit involves a number of factually discrete claims joined together purely for litigation convenience. Although a common question of law is shared — whether certain insurance contracts violate the Alabama Mini-Code — this does not transform the factually independent events into a single case or controversy under Article III. If it were otherwise, a plaintiff or set of plaintiffs could define the contours of an Article III case or controversy by careful formulation of a common question of law or fact. No common event or set of significant factual events exists between the class members to whose claims the claims against Superior were fraudulently joined and those for whom Superior is a proper defendant. Therefore, this court cannot retain jurisdiction over the named plaintiffs or the class members asserting claims against Superior. Their claims will be **REMANDED**. At the same time, this court cannot adjudicate with respect to a class that has no representative. Therefore, the claims of the class members over which

5

this court has original jurisdiction will be **DISMISSED**, without prejudice, for lack of named plaintiff representative(s).[1]

This 18th day of February 1997.

Robert B. Propst
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] In effect, the court has held that there are two classes — one as to which there is a claim against Superior and the other defendants and another class which has no claims against Superior.